## JOSEY *v.* STATE.

### Opinion delivered November 30, 1908.

1. SALE OF CHATTEL—DELIVERY TO CARRIER—EFFECT.—Before a delivery of goods by a vendor to a carrier can be held to be a delivery to the vendee, so as to vest title in the latter, there must be an agreement, either express or implied, that there shall be such delivery, and the goods must be properly consigned to the vendee. (Page 272.)

2. LIQUORS—DELIVERY OF PACKAGE TO CARRIER.—Where whisky was ordered by two persons severally, a delivery of the whisky in a single package to a carrier addressed to them jointly did not constitute a delivery to either of them until actual delivery was made. (Page 272.)

3. SAME—WHAT CONSTITUTES SALE.—One who took an order for whisky in a prohibition territory and delivered the whisky there will be held to be the vendor. (Page 273.)

4. SAME—LICENSE—BURDEN OF PROOF.—The burden is upon the vendor of whisky to prove that he had a license to sell the same. (Page 273.)

5. CRIMINAL LAW—DIRECTING VERDICT.—It is not error, in a proper case, to direct a verdict of guilty in a misdemeanor case not involving imprisonment. *Roberts* v. *State,* 84 Ark. 564, followed. (Page 273.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was indicted for the crime of selling liquor without a license in Hempstead County, Arkansas, on the 19th day of October, 1907. Witness Lewis testified that he gave appellant an order for some whisky, gave him the money in the morning, and in the afternoon appellant handed him a quart of whisky at the head of the stairs in the Opera House. The whisky was delivered to the witness in the town of Hope, Hempstead County, Arkansas, in October, 1907, before he went before the grand jury. The whisky was labeled to witness when he got it, and he supposed it was like all the whisky he had ordered through express that way. He suposed the whisky had come when the train did. He saw a gentleman go over with the box and supposed that was the whisky. He went around and telephoned appellant about the whisky, and appellant handed it to witness as before stated. When witness gave Josey the money that morning, he said he thought he had time to get the order off on that train. The bottle was wrapped up and witness' name was on a card attached to the bottle. He received the whisky in the evening after the train arrived from Texarkana. That was the only order he ever gave appellant for whisky. Such was the evidence of the State. A witness on behalf of appellant testified as follows: "I live in Hope, Arkansas, and was running a butcher shop prior to October term of Hempstead Circuit Court, 1907. My shop was located on the first floor under the opera house. I received a box or package by express which contained two quarts of whisky. One bottle was labeled to me and one to W. G.

Lewis. This express package came addressed to either 'Lewis and Hamilton,' or 'Hamilton and Lewis,' and when I opened the package I carried the bottle labeled to Lewis up stairs, and turned it over to Mr. Josey. It was not mine, and I did not want it. I was expecting whisky that day, and went to the express office to get it. I had telephoned my order in for mine. It came from Texarkana Bank Saloon. Package addressed to Lewis and Hamilton. My quart had my name on it. I paid express charges 25 cents. I did not get my money back. I did not see him when he came after his, and I did not fool with it. I did not tell Mr. Josey to collect the express. I did not turn it over to Paul Briant because it was further up there than it was up stairs. Everything that came that way I would turn it over to Mr. Josey. Josey was not running an express office that I know anything about. I had not ordered any whisky through Mr. Josey and never had. I don't know why I thought Mr. Josey the proper party to turn this whisky over to. He had said nothing to me before about it. I did not wait for Mr. Lewis to come to me for his whisky. I wanted mine, and I took it out and left Mr. Lewis's with Mr. Josey. I opened the package at my shop. I did not want to deliver the whisky to Mr. Lewis."

The court directed the jury to return a verdict of guilty. Appellant asked, and the court refused, the following prayer:

"If the jury believe from the evidence that the witness, Bill Lewis, met the defendant, William Josey, and handed him money, accompanied by the request to order for him the liquor mentioned in the indictment, and that the defendant accepted the money and sent the same to Texarkana, Texas, to a liquor dealer of that city, and that said liquor dealer at Texarkana put up, labeled and directed the package to Lewis, at Hope, Arkansas, and delivered the same to the express company at Texarkana, Texas, then the sale occurred at Texarkana and not at Hope, and you will acquit."

Appellant duly excepted to the rulings of the court, and seeks by this appeal to reverse the judgment.

*Jobe & Carrigan,* for appellant.

1. The sale occurred at Texarkana, and not at Hope. 43 Ark. 343; 51 *Id.* 153.

2. It was error to direct verdict for plaintiff. 6 Thompson on Neg. § 7394.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

This case comes within the rule announced in 42 Ark. 275 and 41 *Id.* 355.

WOOD, J. (after stating the facts.) This court, in *Herron v. State,* 51 Ark. 133, held that "the delivery of goods to a carrier, when made in pursuance of an order to ship them, is in effect a delivery to the consignee." See also cases cited in the opinion.

This is upon the theory that the common carrier is the agent of the consignee who orders the goods shipped. See *State* v. *Carl,* 43 Ark. 353, and cases cited. The rule with reference to a delivery to a public carrier being a delivery to the consignee is very carefully and correctly stated by the Supreme Court of Massachusetts as follows: "When goods ordered and contracted for are not directly delivered to the purchaser, but are to be sent to him by the vendor, and the vendor delivers them to the carrier, to be transported in the mode agreed on by the parties or directed by the purchaser, or, when no agreement is made or direction given, to be transported in the usual mode; or when the purchaser, being informed of the mode of transportation, assents to it; or where there have been previous sales of other goods, to the transportation of which in a similar manner the purchaser has not objected, the goods when delivered to the carrier are at the risk of the purchaser, and the property is deemed to be vested in him, subject to the vendor's right of stoppage *in transitu.*" *Wheelhouse* v. *Parr,* 141 Mass. 787.

This is in accord with the previous rulings of the court. *Gottlieb* v. *Rinaldo,* 78 Ark. 123; *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456. The result of this rule is that, before a delivery by the vendor to a carrier can be held to be a delivery to a vendee so as to vest title in the latter, there must be an agreement, either expressed or implied, that there is to be such delivery, and also that the goods are to be properly consigned to the vendee.

In the present case there was no express agreement concerning the mode of delivery; and, as Lewis and Hamilton were not joint purchasers, there can be no agreement implied from the circumstances of the case that the delivery should be made to a carrier consigned to them jointly. A delivery to the carrier in that way did not constitute a delivery to either of the joint consignees, and the title to the liquor did not pass to either of them until actual delivery took place in the town of Hope.

But the proof does show that appellant received the money for the whisky, and delivered the whisky to Lewis in Hope, Hempstead County, Arkansas. It must be held under such circumstances that appellant was the owner and vendor of the whisky. This, under *Yowell* v. *State,* 41 Ark. 355, and *Blackwell* v. *State,* 42 Ark. 275, would make the sale complete in Hope. Appellant did not show any license, and the burden as to this was on him. *Willams* v. *State,* 35 Ark. 430; *Rana* v. *State,* 51 Ark. 481; *Evans* v. *State,* 54 Ark. 227.

The court was therefore correct in refusing appellant's prayer for instruction and in directing a verdict in favor of the commonwealth. *Roberts* v. *State,* 84 Ark. 564.

The judgment is affirmed.